MONROE, J.
This matter comes before the court on the appeal of Eraste Fontenot from a judgment dismissing his opposition to the account of Alcide Fontenot, his father, as administrator of the succession of Louisa *338 McGee, his mother. Mrs. Fontenot died-March 17, 1910, leaving an estate, consisting of her interest in the community, and nine children, of whom five, including opponent, were majors. The surviving, spouse caused an inventory to be made, was appointed tutor and administrator, and, alleging that the estate was heavily in debt, caused the property thereof, movable and immovable, to be sold for the payment of debts. He seems to have filed an account in which he afterwards discovered that there were some errors and which does not appear in the record, and he thereafter filed an amended account, which was opposed by the present appellant, as follows:
Amounts Due the Community, Not Accounted for.
1. Amount paid to the administrator by opponent ..................................... $425 00
2. Amount paid to the administrator by opponent ..................................... 25 00
3. Amount paid to tbe administrator by opponent ..................................... 17 33
4. One bead of cattle, butchered, after dissolution of community.................... 10 00
5. Cow and calves............................. 25 00
6. Difference in value of bed and bedding____ 10 00
7. Difference in value of armoir.............. 2 00
8. Difference in value of two small beds and bedding .............................. 10 00
9. Difference in value of two calves.......... 4 00
10. Difference in value of heifer.............. 6 00
11. Note, with interest.......................... 27 00
12. Amount collected from L. Manuel........ 67 00
13. Crop 1910 .........................'........... 380 99
Rent in corn................................. 219 50
Rent in rice................................. 567 10
14. One filly..................................... 50 00
15. Five pigs .................................... 7 00
Amounts Improperly Charged to the Community.
17. (1) Amount paid Joseph Bordelon........$182 22
18. (2) Amount paid Df. L. Lazaro........... 12 06
19. (3) Improper charge in favor of separate estate of deceased..................... 9 00
20. (4) Overcharge in favor of administrator for separate funds.................... 113 63
21. (5) Improper charge against community.. 9 25
22. (6) Improper charge against community.. 15 75
Items 1, 2, 3. There Is some conflict in the testimony in regard to this matter; but, after carefully considering it, we find the following facts:
On December 2, 1909, opponent, who was already indebted to his father upon a note for $635, which had been executed in 1907, made and delivered to him three other notes, of $475 each, payable on January 1, 1911, 1912, and 1913, respectively, with interest at 8 per cent, from (as we infer) January 1, 1910, until paid. When Mrs. Fontenot died, on March 17, 1910,- those notes were wholly unpaid. On March 19, Alcide Fontenot (opponent’s father) requested opponent to pay him $300 on account, which opponent did, borrowing $50 of the amount from B. L. Derouen, and, thereafter, as further part payment, he let his father have a set of blacksmith’s tools, vice and anvil, and advanced other sums of money, including the amount needed for the payment of his mother’s funeral expenses, until April 7th, when, at his father’s request, he gave him a check for $27.15, thereby reducing his indebtedness on one (we will say the first) note to $50, and his entire indebtedness, on the three notes, to an even $1,000. Later still, on June 6th, he gave a check for $517.33, which served to pay the balance of $50 due on the first, and $450 on account, on the second note, together with the interest on the amount so paid up to the date of the payment, thus leaving due a balance of $25 on the second, and the whole amount called for by the third, note.
The inventory is not copied in the transcript, but the procés verbal of the sale (made September 24, 1910) shows:
“104. One note and part of note against Eraste Fontenot, sold for $529.”
'And:
“105. One note against Eraste Fontenot for $475, sold * * * for $475.”
In the account, the following item appears in the active mass:
“2. Gash collected, prior to sale, in payment of note of Eraste Fontenot, carried in error on procés verbal of sale as item No. 104 thereof, but which, instead, was previously paid by check dated June 6, 1910, and accounted for, together with the proceeds of sale of the other *340 community property inventoried, instead of being omitted therefrom and carried separately.”
Turning to the account, we find that it shows $8,492.40 as the total proceeds of the sale, including the two notes and part of note (items 104 and 105), with an explanatory statement to the effect that the note represented by item 104 was not sold, as appears from the procSs verbal, but had been paid before the sale, and was therefore accounted for as cash, as follows:
1. Proceeds of sale of community property, made Sept. 24,1910, as per proces verbal of said sale............................... $8,492 40
Less item 104 of proces verbal — note paid prior to sale and not sold on said day.. 529 00
Actual proceeds of said sale.............. $7,963 40 2. Casb collected, prior to sale, in payment of note of Eraste Fontenot, carried in error on proces verbal of sale as item . No. 104 thereof, but which, instead, was previously paid by the maker, partly by check, dated June 6, 1910, and accounted for, together with the proceeds of sale of the other community property inventoried, instead of being omitted therefrom and carried separately.. 529 00
$8,492 40
We find in the transcript an admission concerning the foregoing explanation as follows:
“It is admitted * * * that there is an error in the tableau in regard to item 105 of the procSs verbal being the one that was not sold, and that item 104, which is stated in the tableau not to have been sold, was in fact sold.”
For the purposes of the present inquiry, the error makes no difference, as both notes and the part of note, as represented by the items 104 and 105, are accounted for; in the one case, as having been sold with other community property; in the other, as having been paid in cash, prior to the sale. Looking to the “passive mass,” we find that the administrator used the check of $517.33, of June 6, 1910 (which, as we have stated, was given him in payment of the balance of $50, due on the first note, and of $450, on the second note, together with the interest) in paying to Joseph Bordelon a debt of the community. The administrator has not, however, accounted for $425, or value to that amount, received by him between March 19 and April 7, 1910, as payment, on account, of the first note, and should so account.
Item 4. The evidence shows that the administrator caused a beef, the property of the community, to be butchered, and that it was worth $10, for which he has failed to account; and he should account for that sum.
Item 5. It is shown that he sold two cows, with calves, to Eraste and Oless Fontenot, and four calves to L. Landreneau, the whole, for $74; whereas, he has accounted for but one cow and four calves, at $49. He should therefore account for the additional $25.
Items 6, 7, 8, 9, and 10 relate to certain articles which the administrator did not sell, but retained, charging himself with what he conceived to be their value; and the complaint is that his valuation was too low. We are not so convinced, and we find, as to some of the articles, that it was understood that they were to be given to the minor children, which was done, so that there was no reason why the administrator should have charged himself with anything on their account.
Item 11 relates to a note for $25, due the community by Artemour Deville, and which was collected by the administrator, with $2 of interest, after the dissolution of the community. The collection should be accounted for.
Item 12 is abandoned.
[1, 2] Item 13. Opponent here complains that the administrator has failed to account for the crop raised and the crop rentals paid, on community property, during the year 1910. The administrator’s partner in community died (as we have stated) on March 17th, when but little of the crop had been planted: he married again on November 24th, following, when all of the crop had been harvested; *342 and, being the usufructuary, be is under no obligation to account for the crop raised in the meanwhile. C. 0. 916. We know of no provision of law under which the surviving spouse is deprived of the usufruct of the community property because he administers the succession of his deceased wife, or under which he should be deprived of his commission as administrator because he is entitled to such usufruct. The usufructuary is, however, bound for the taxes assessed against the property held in usufruct, and, as the administrator has charged such taxes to the community, his account should be amended in that respect.
Items 14, 15, and 16 are abandoned.
Item 17 (being No. 1 of the complaints against the passive mass) is based on the following facts:
Certain property had been acquired by the community from Joseph Bordelon and was burdened with a mortgage for part of the price, in which mortgage the minor children of Bordelon were interested. The property was ordered to be sold subject to the condition that the purchaser should assume the payment of $976.25, with 8 per cent, interest thereon per annum, to each of said three minors upon his attaining majority, and it was so advertised. It was adjudicated to Adraste Veillon, “for the sum and price of $6,000,” and Veillon, with the concurrence of the tutor of the minors, paid the whole amount of his bid in cash; so that there was paid to the minors an aggregate amount of $2,928.75, with interest from January 1, 1910, to October 11, 1910, amounting to $182.-22, which aggregates of principal and interest the administrator deducts from the gross price. The complaint in the opposition is that the $182.22 of interest should have been paid by the adjudicatee. Opponent’s counsel say, in their brief, that the terms of sale were interpreted to mean:
“That whoever would bid for the purchase.of said property must assume and pay those interests from January 1, 1910, and this was a deterrent upon any one bidding upon the property to such price as would, in .addition to the $182.22, have exceeded what tlie property was collectively sold for to the administrator, himself through the guise of Adraste Veillon; and thereupon the administrator paid over and charged the interest to the community and took possession of the property for himself and credited the community with $6,000, which, less the interest, wrongfully paid from the proceeds of the sale, makes the price actually realized by the community $5.S37.7S, for the house property, instead of $6,000, as should be realized under the terms and conditions of the sale.”
The opponent is not, however, attacking the sale, but is here to claim his share of the price, whatever it may be; and, whether the purchaser, whoever he may have been, retained in his possession the amount due the Bordelon minors, with interest up to the date of the sale, or, by agreement with them, through their proper representative, paid it to them, through such representative, is a matter in which opponent is not concerned, since such interest could not possibly fall into this succession.
Item 18 (being No. 2 of the complaints against the passive mass) is abandoned.
Item 20 (passive mass No. 4) represents a complaint that the administrator has credited his separate estate and charged the community with $1,113.63, when the amount should have been considerably less.
[3] According to the evidence, the administrator owed no debts at the date of his first marriage, and acquired, either about that time or afterwards, $227.13 by inheritance. He had, also, about a year before his marriage, acquired 297.62 arpents of land, for which he paid, say, $77.72. The land was afterwards sold for a much higher price, and the proceeds invested in other property, the title of which, of course, vested in the community. The contention is that the administrator has a claim' against the community and against the proceeds of said community property for the amount which he paid for the 297.62 arpents of land, but that he is not entitled to recover the price for *344 which, the land was subsequently sold, because, as it is alleged, it is not shown with sufficient certainty that such price was invested or inured to the enrichment of the community.
The evidence in regard to the destination of the price for which the property in question was sold is, however, the same as that concerning the destination of the $227.13 which was acquired by inheritance and as that concerning the $77.62 which the administrator paid for said property. The administrator had but little when he was married, and the lady whom he married appears to have had nothing. He testifies that all the money that he had and all that came into his possession he invested in property which, at once, became community property, and as the community (now in liquidation) has property, and he has none, and there is no suggestion that he squandered the funds arising from the sale of his separate property or invested them in his own name, we can find no reason for not crediting his testimony.
Items 21 and 22 (passive mass Nos. 5 and 6) are abandoned.
It is therefore ordered, adjudged, and decreed that, in so far as the judgment appealed from rejects the demands of the opponent as to the matters relating to the active mass of the succession and complained of in the paragraphs numbered 2, 3, 6, 7, 8, 9, 10, 13, 14, 15, and 16 of the opposition, and as to the matters relating to the passive mass of said succession and complained of in paragraphs numbered 1, 2, 3, 4, 5, and 6 of the opposition, the same is hereby affirmed; and that, in so far as said judgment rejects said demands as to matters relating to said active mass and complained of in the paragraphs numbered 1, 4, 5, 11, and 12 of the opposition, said judgment be annulled, avoided, and reversed, and that there now be judgment sustaining said opposition and directing that the administrator amend his account by adding to the active mass the following amounts, respectively, to wit: $425; $10; $25; $27; $67. >
It is further decreed that the item of $26, charged against the community estate for taxes for the year 1910, be disallowed and charged to the accountant individually. It is further decreed that, as thus amended and as recast in accordance with said amendment, said account and tableau be approved and homologated and the funds distributed accordingly; the costs of this opposition and appeal to be paid by Alcide Fontenot individually.